IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION


JACQUELINE G. LANGWELL,

                    Plaintiff,

      v.

COMMISSIONER OF SOCIAL SECURITY
ADMINISTRATION,

                Defendant.
_____

Case No. 3:14-cv-00019-ST

FINDINGS AND
RECOMMENDATION

STEWART, Magistrate Judge:

       Jacqueline Langwell ("Langwell") seeks judicial review of the final decision by the

Social Security Commissioner ("Commissioner") denying her application for Supplemental

Security Income ("SSI") under Title XVI of the Social Security Act ("SSA"). This Court has

jurisdiction to review the Commissioner's decision pursuant to 42 USC § 405(g). For the reasons

set forth below, the Commissioner's decision should be REVERSED and REMANDED for

further proceedings.


1 – FINDINGS AND RECOMMENDATION

## ADMINISTRATIVE HISTORY

On January 21, 2011, Langwell protectively applied for SSI, alleging a disability onset date of March 15, 2008. Tr. 232-40.[1]  Langwell also applied for Disability Insurance Benefits ("DIB"). Tr. 227-29.  However, Langwell now seeks to amend her onset date to December 30, 2010.  Absent any objection by the Commissioner, that request is granted.  Because Langwell's amended onset date is later than her date last insured (December 31, 2007), Langwell appeals only the Commissioner's denial of SSI benefits.

Langwell's SSI application was denied initially and upon reconsideration. Tr. 107, 134. Langwell timely requested a hearing before an Administrative Law Judge ("ALJ").  Tr. 157-62. On June 25, 2013, ALJ Jo Hoenninger held a hearing, at which Langwell, who was represented by counsel, and a vocational expert ("VE") testified.  Tr. 41-71.  On July 17, 2013, the ALJ issued a decision finding Langwell not disabled.  Tr. 20-33.  After the Appeals Council declined her request for review (Tr. 8-11), Langwell filed this action.

## BACKGROUND

Born in 1973, Langwell was 27 years old on her alleged disability onset date, as amended.  Tr. 45, 232.  She completed seventh grade and eventually earned a GED.  Tr. 47, 259. She has past relevant work as a retail cashier, census taker, barista, delivery driver, bell-ringer, telemarketer, waitress, and gas station attendant.  Tr. 48-53, 262.  Langwell alleges she is unable to work due to lupus, posttraumatic stress disorder ("PTSD"), severe depression, asthma, and migraines.  Tr. 255.

## STANDARD OF REVIEW

The court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record.  *Turner v.*

---

[1]  Citations are to the page(s) indicated in the transcript of the administrative record filed on October 28, 2014 (docket #12).

*Comm'r of Social Sec.*, 613 F2d 1217, 1222 n2 (9th Cir 2010) (citation omitted).  "'Substantial

evidence' means more than a mere scintilla, but less than a preponderance; it is such relevant

evidence as a reasonable person might accept as adequate to support a conclusion." *Garrison v.*

*Colvin*, 759 F3d 995, 1009 (9th Cir 2014), quoting *Lingenfelter v. Astrue*, 504 F3d 1028, 1035

(9th Cir 2007).  The court must weigh "both the evidence that supports and the evidence that

detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific

quantum of supporting evidence." *Id*, quoting *Lingenfelter*, 504 F3d at 1035.  "'If the evidence

can reasonably support either affirming or reversing,' the reviewing court 'may not substitute its

judgment' for that of the Commissioner. *Gutierrez v. Comm'r of Social Sec.*, 740 F3d 519, 523

(9th Cir 2014), quoting *Reddick v. Chater*, 157 F3d 715, 720-21 (9th Cir 1996).

The initial burden of proof rests upon the claimant to establish disability. *Burch v.*

*Barnhart*, 400 F3d 676, 679 (9th Cir 2005).  To meet this burden, the claimant must demonstrate

an "inability to engage in any substantial gainful activity by reason of any medically

determinable physical or mental impairment which can be expected . . . to last for a continuous

period of not less than 12 months." 42 USC § 423(d)(1)(A).

The Commissioner has established a five-step sequential process for determining whether

a person is disabled. *Bowen v. Yuckert*, 482 US 137, 140 (1987); *Lounsbury v. Barnhart*, 468

F3d 1111, 1114 (9th Cir 2006); 20 CFR § 416.920(a)(4).  First, the Commissioner considers

whether a claimant is engaged in "substantial gainful activity." *Yuckert*, 482 US at 140; 20 CFR

§ 416.920(a)(4)(i).  If so, the claimant is not disabled.

At step two, the Commissioner evaluates whether the claimant has a "medically severe

impairment or combination of impairments." *Yuckert*, 482 US at 140-41; 20 CFR

§ 416.920(a)(4)(ii).  If the claimant does not have a severe impairment, she is not disabled.

At step three, the Commissioner determines whether the claimant's impairments, either singly or in combination, meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Yuckert*, 482 US at 141; 20 CFR § 416.920(a)(4)(iii). If so, the claimant is presumptively disabled; if not, the Commissioner proceeds to step four. *Yuckert*, 482 US at 141.

At step four, the Commissioner resolves whether the claimant can still perform "past relevant work." 20 CFR § 416.920(a)(4)(iv) & (e). If the claimant can work, she is not disabled; if she cannot perform past relevant work, the burden shifts to the Commissioner.

At step five, the Commissioner must demonstrate that the claimant can perform other work existing in significant numbers in the national or local economy. *Yuckert*, 482 US at 141-42; 20 CFR § 416.920(4)(a)(4)(v) & (g). If the Commissioner meets this burden, the claimant is not disabled. 20 CFR § 416.920(a)(4)(v) & (g)(i).

## <u>ALJ'S FINDINGS</u>

At step one, the ALJ found that Langwell had not engaged in substantial gainful activity since August 30, 2007. Tr. 23.

At step two, the ALJ determined that Langwell suffered from the severe impairments of an anxiety disorder, an affective disorder, a personality disorder, and a substance addiction disorder. *Id*.

At step three, the ALJ found that Langwell's impairments, either singly or in combination, did not meet or equal the requirements of a listed impairment. Tr. 24. Because Langwell did not establish disability at step three, the ALJ continued to evaluate how her impairments affected her ability to work during the relevant period. The ALJ found that

Langwell had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels but with the following nonexertional limitations:

> [s]he can understand, remember and carry out simple instructions to accomplish simple, routine tasks as long as she is not working in close proximity to co-workers. She can respond appropriately to supervisors on a routine basis with clear expectations. She should have no contact with the general public and only occasional, brief, superficial contact with co-workers.

Tr. 25.

At step four, the ALJ found that Langwell was unable to perform her past relevant work. Tr. 31.

Based on the testimony of the VE, the ALJ determined at step five that Langwell could perform other work existing in significant numbers in the national and local economy despite her impairments, such as groundskeeper, room cleaner, and industrial cleaner. Tr. 32. Accordingly, the ALJ concluded that Langwell was not disabled. Tr. 33.

## FINDINGS

Langwell alleges that the ALJ erred by improperly rejecting the opinions of two examining psychologists and a treating nurse practitioner.

## I.   Medical Evidence

### A.   Legal Standard

The ALJ is responsible for resolving conflicts in the medical record, including conflicts among physicians' opinions. *Carmickle v. Comm'r*, 533 F3d 1155, 1164 (9th Cir 2008). The opinion of a treating physician is generally accorded greater weight than the opinion of an examining physician, and the opinion of an examining physician is accorded greater weight than the opinion of a non-examining physician. *Garrison*, 759 F3d at 1012 (citations omitted); *see also Lester v. Chater*, 81 F3d 821, 830 (9th Cir 1995). An uncontradicted treating physician's

opinion can be rejected only for "clear and convincing" reasons. *Baxter v. Sullivan*, 923 F2d

1391, 1396 (9th Cir 1991). In contrast, if the opinion of an examining physician is contradicted

by another physician's opinion, the ALJ must provide "specific, legitimate reasons" for

discrediting the examining physician's opinion. *Lester*, 81 F3d at 830. An ALJ may also

discount a medical source's opinion that is inconsistent with the source's other findings. *Bayliss*

*v. Barnhart*, 427 F3d 1211, 1216 (9th Cir 2005).

### B.    Steven Barry, Ph.D.

Steven P. Barry, Ph.D., performed a psychological evaluation of Langwell on April 12,

2012. Tr. 602-11. He diagnosed Langwell with PTSD, amphetamine dependence in early full

remission, borderline personality disorder not otherwise specified ("NOS") with anti-social and

borderline characteristics, and a global assessment of functioning ("GAF") of 44-47.[2] Tr. 611.

He also opined that he "can't envision how [Langwell] can be expected to look for, let alone

maintain employment and I believe she is disabled." *Id.*

The ALJ gave Dr. Barry's opinion "little weight," explaining that it was based primarily

on Langwell's subjective reports, her "history of chaotic upbringing and the results of [her]

Personality Assessment Inventory (PAI) which were consistent with a personality disorder

diagnosis." Tr. 30. He also found the opinion inconsistent with a contemporaneous medical

record and Langwell's testimony. *Id.* The ALJ also explained that he afforded "little weight" to

Dr. Barry's GAF assessment, as it included the effects of financial issues, employment issues,

---

[2] The Diagnostic and Statistical Manual of Mental Disorders organizes each psychiatric diagnosis into five levels relating to different aspects of the disorder or disability. American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* 27-33 (4th ed., text rev., 2000) ("DSM-IV-TR"). Axis V is the Global Assessment of Functioning ("GAF") which reports the clinician's judgment of the individual's overall functioning. *Id* at 32-33. A GAF score of 41-50 indicates that the patient has "[s]erious symptoms (*e.g.*, suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (*e.g.*, no friends, unable to keep a job)." *Id* at 34.

and health concerns, "rather than mental impairments[,] and does not provide an assessment of [her] ability to function in a work setting."  Tr. 28.

The Commissioner contends that the ALJ did not err, as a portion of Dr. Barry's opinion concerned an issue solely reserved to the Commissioner.  Indeed, a physician's conclusory statement that a claimant is "disabled" or "unable to work" is not binding on the Commissioner's disability determination.  20 CFR § 416.927(d)(1).  However, a physician's opinion regarding the likelihood of a claimant to maintain gainful employment based on her impairments is not a conclusory statement and, therefore, should be considered.  *Hill v. Astrue*, 698 F3d 1153, 1160 (9th Cir 2012).  Dr. Barry's opinion consists of two parts.  The first part, that he cannot envision how Langwell could be expected to seek or maintain employment, is not conclusory.  Rather, it conveys Dr. Barry's opinion that Langwell would be unlikely to be successful at seeking and maintaining employment.  In contrast, the second part of Dr. Barry's opinion that "I believe she is disabled" is a conclusory statement which is not binding on the ALJ.  20 CFR § 416.927(d)(1); *McLeod v. Astrue*, 640 F3d 881, 885 (9th Cir 2011) ("The law reserves the disability determination to the Commissioner.").[3]

The Commissioner also argues the ALJ reasonably rejected Dr. Barry's opinion as primarily based on Langwell's subjective reports because her testimony was deemed not credible.  Tr. 26-29.  *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F3d 1219, 1228 (9th Cir 2009) (ALJ may discount a physician's opinion as to limitations to the degree it rests on a claimant's less than credible statements).  However, unlike *Bray*, the ALJ did not elaborate which of Langwell's subjective reports were erroneously adopted by Dr. Barry.  Dr. Barry included a summary of information used to formulate his assessment, including a PAI.  Tr. 610-11.  These

---

[3] The ALJ also attributed little weight to the GAF score provided by Dr. Barry.  Tr. 28, 30, 611.  However, Langwell does not appear to contest that decision.  Thus, this court will review only whether the ALJ appropriately assessed Dr. Barry's other opinion evidence.

included: a history of lupus and seizure disorder unsubstantiated by medical records; a chaotic

family history; little history of success, even in structured settings; poor judgement, high anxiety,

and lack of personal responsibility; history of work failures; and personality disorder. *Id.* The

ALJ did not identify which, if any, of the factors Dr. Barry provided were invalid, given

Langwell's questionable credibility. Further, Langwell contends, and the court agrees, that

Dr. Barry's findings are generally consistent with other assessments in the record. Accordingly,

this reason proffered by the ALJ is not legally sufficient.

     The ALJ also found Dr. Barry's opinion of limited import because it was based on

Langwell's chaotic upbringing and PAI test results "which were consistent with a personality

disorder." Tr. 30. The ALJ does not explain why Dr. Barry's reliance on either of these factors

limits the validity of his opinions. The ALJ apparently agreed with Dr. Barry that Langwell had

a personality disorder. Tr. 23. Dr. Barry's consideration of Langwell's chaotic upbringing does

not diminish his opinion that she would have difficulty maintaining employment due to her

diagnosed PTSD and personality disorder. Tr. 291, 382-84, 476, 478-79. 604-05, 610-11, 1005.

Similarly, it is not appropriate to question Dr. Barry's opinion because Langwell's PAI test

results were consistent with a personality disorder. The goal of this inquiry is to establish

whether Langwell's mental impairments prevent her from performing gainful activity. The

reasoning proffered by the ALJ is not logical and, therefore, cannot be sustained.

     The ALJ also discounted Dr. Barry's opinion because it was allegedly inconsistent with a

single medical record of April 19, 2012, which stated that Langwell's mood was "euthymic

overall." Tr. 30, 867. Although her mood was stable on that day, Langwell argues that the

records from that period generally reflect a pattern of psychological/emotional instability.

Indeed, the record shows a few weeks later, her mood was unstable and she was anxious and

8 – FINDINGS AND RECOMMENDATION

irritable. Tr. 863.  By July 2012, Langwell was reporting increasing numbers of panic attacks, and by October 2012, Langwell was hospitalized for suicidal ideation.  Tr. 930, 932.  As the Ninth Circuit has repeatedly emphasized, it is improper to make negative credibility assessments based on waxing and waning symptoms in the context of mental health issues.  "Cycles of improvement and debilitating symptoms are a common occurrence, and in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding claimant is capable of working."  *Garrison*, 759 F3d at 1017 (citations omitted).  Accordingly, the ALJ's reference to a single chart note is not sufficient to discount Dr. Barry's opinion that he would not expect Langwell to maintain regular employment.

The ALJ additionally stated that Dr. Barry's opinion was contradicted by Langwell's testimony that she had not been disciplined for behavioral issues while incarcerated and that she was working four days per week while in prison.  Tr. 30-31, 61-64.  Langwell's ability to work four days per week in an extremely structured setting may indicate some level of functionality.  However, the Commissioner must also consider that "in cases involving chronic mental disorders, overt symptomatology may be controlled or attenuated by psychosocial factors . . . .  Highly structured and supportive settings . . . may greatly reduce the mental demands placed on [a claimant]."  20 CFR Part 404, Subpt. P, App. 1, § 12.00(F) (incorporated by reference into SSI regulations 20 CFR 416.920a(c)(2)); *see Garrison*, 759 F3d at 1017 ("'Individuals with chronic psychotic disorders commonly have their lives structured in such a way as to minimize stress and reduce their signs and symptoms.  Such individuals may be much more impaired than their signs and symptoms would indicate.'"), citing *Hutsell v. Massanari*, 259 F3d 707, 711 (8th Cir 2011); *see also Wright v. Comm'r of Soc. Sec.*, No. 1:13–cv–02193–ST, 2015 WL 462016, at *9-10 (D

Or Feb. 3, 2015).  Since a prison provides a regimented lifestyle and rewards for good behavior that are unique to incarceration, it is precisely the type of highly controlled environment the SSA requires the ALJ to contemplate before finding that a claimant's behavior is improved or her symptoms have diminished.  *See Clester v. Comm'r of Soc. Sec.*, No. 3:09-cv-00765-ST, 2010 WL 3463090, at *7 (D Or Aug. 3, 2010).  Indeed, Langwell recognized that she was "doing better" in prison due to the lack of competition which is inherent in a regular workplace.  Tr. 63-64.  Thus, to the extent the ALJ found Langwell could control her impulses while incarcerated and was able to perform gainful activity outside of the prison setting because of her alleged success while incarcerated, the findings are not legally sufficient.

For these reasons, the ALJ failed to provide legally sufficient reasons to discount Dr. Barry's opinion that Langwell would likely be unable to maintain regular employment.

## C.    **Linda Fishman, Ph.D.**

Langwell contends the ALJ erred in rejecting the opinion by Linda Fishman, Ph.D., that Langwell "would have difficulties coping with stress in a competitive work environment and with completing a normal work-day or work-week." Tr. 30.

Dr. Fishman evaluated Langwell on November 30, 2010, based on an interview, review of records, observations, and testing.  Tr. 474-70.  Dr. Fishman identified two groups of factors that would cause Langwell difficulty in coping with stress in a competitive work environment and completing a normal workday or work week.  Tr. 478.  In addressing Langwell's drug use, Dr. Fishman indicated that Langwell's ability to perform regular work would be limited by "traumatic stress, anxiety, and drug effects."  *Id*.  Next, in a paragraph addressing Langwell's mental status examination, Dr. Fishman outlined work limitations, including the requirement that she can perform only simple and repetitive tasks and would have difficulty maintaining regular

employment due to stress.  *Id*.  The ALJ only addressed the first part of Dr. Fishman's opinion concerning the combination of stress, anxiety, and drug effects, and did not address Langwell's depression which Dr. Fishman indicated was also a factor affecting Langwell's ability to maintain gainful employment.  Tr. 30.

The Commissioner argues that Dr. Fishman attributed Langwell's greater limitations to her inconsistent use of her medications which helped control her symptoms.  However, Dr. Fishman did not indicate greater limitations stemmed from her inconsistent use of medications. Rather, she noted that Langwell's judgment appeared limited, as evidenced by her resistance to medical treatment for lupus, inconsistent use of her prescribed psychotropic medications, and her decision to marry someone she did not know well.  Tr. 474-75.  Thus, the Commissioner's argument is without merit.

The Commissioner also argues that Dr. Fishman noted Langwell had logical and linear thought processes with no evidence of any thought disorder and with typical cognitive processing and speech.  The Commissioner reasons that the ALJ properly found that these findings were not consistent with the conclusion that Langwell was not capable of sustaining competitive employment.  However, the ALJ did not make those particular findings in his decision.  Thus, the argument is not a valid basis upon which to affirm his decision.  *Pinto v. Massanari*, 249 F3d 840, 847 (9th Cir 2001).

The Commissioner also argues that the ALJ did not disregard Dr. Fishman's opinion wholesale, but gave it "some weight."  Tr. 30.  While the ALJ formulated an RFC consistent with Dr. Fishman's recommendation that Langwell was limited to simple, repetitive work, the ALJ appears to have disregarded other pertinent recommendations.  Tr. 30.  For example, Dr. Fishman indicated that Langwell's PTSD, anxiety disorder, and personality disorder "will pose

severe difficulties and potential physical risk to others when [she] is interacting with co-workers, trainers, supervisors, and customers." Tr. 479. She noted that Langwell's difficulties with attention, concentration, and memory will make learning new tasks and skills difficult. *Id*. Dr. Fishman also noted that a multitude of factors related to Langwell's severe mental impairments, including contra-indication of medications to address attention and hyperactivity issues, extreme distrust of others resulting in lack of ability to interact adaptively with co-workers and supervisors, physical pain exacerbated by anxiety, and limited insight and poor judgment, all presented "significant and severe psychological barriers to her functioning." Tr. 478-79. While the ALJ's RFC allowed Langwell only limited interactions with co-workers and supervisors and precluded interaction with the public, even occasional interaction (up to one-third of a normal workday)[4] arguably goes far beyond the more extreme restrictions suggested by Dr. Fishman.

The ALJ is "entitled to draw inferences 'logically flowing from the evidence,'" even if other interpretations are possible. *Macri v. Chater*, 93 F3d 540, 544 (9th Cir 1996), quoting *Sample v. Schweiker*, 694 F2d 639, 642 (9th Cir 1982). However, it is not logical to infer from Dr. Fishman's report that Langwell can maintain working relationships with her co-workers and supervisors, is capable of learning new skills and applying them in the context of a full-time work schedule, and can maintain acceptable attendance and otherwise perform in a competitive work environment. Moreover, the ALJ did not provide any specific, legitimate reasons for discounting Dr. Fishman's recommendations to the extent he did not fully adopt them. For these reasons, the ALJ erred.

### D.    Susan Marie, PMHNP, Ph.D.

Following the adverse decision of the ALJ, Langwell submitted a letter opinion from Susan Marie, PMHNP, Ph.D., to the Appeals Council. Tr. 1005. Because the Appeals Council

---

[4] *See* Social Security Ruling 83-10, 1983 WL 31251, at *5 (1983).

had an opportunity to review the material, it became part of the administrative record. Tr. 9;

*Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F3d 1157, 1163 (9th Cir 2012) (citation omitted).

Accordingly, this Court must consider the new evidence to determine if the ALJ's decision is

supported by substantial evidence based on the record as a whole.  *Id.*

      The new evidence indicates that Dr. Marie treated Langwell for just over four months in

2010, reviewed the evaluations of Drs. Barry and Fishman, agreed with their diagnoses, and

stated that with the addition of a "Bipolar Disorder II" diagnosis, Langwell could not function

outside of a "highly supportive environment" and likely would not be able to maintain adequate

production pace and accuracy for 80% of a workday.  Tr. 1005.  The Commissioner submits that

the ALJ's decision remains supported by substantial evidence despite the  new evidence.  That

argument fails for two reasons.  First, as explained above, the ALJ's rationales for affording

diminished weight to the opinions of Drs. Barry and Fishman were not supported by substantial

evidence. Second, Dr. Marie is the only treating physician to proffer a medical opinion, and

treating physicians' opinions are generally afforded the greatest weight.  *Garrison*, 759 F3d at

1012 (citations omitted).  As such, Dr. Marie's recommendations are arguably the most

persuasive and, therefore, could potentially change the outcome of this case.  The Commissioner

erred by failing to address this opinion.

**II.**    <u>**Remand**</u>

      Langwell argues that because the ALJ erred in assessing the opinions of Drs. Barry,

Fishman, and Marie, no outstanding issues remain and this case should be remanded for

immediate payment of benefits.  The decision whether to remand for further proceedings turns

upon the likely utility of such proceedings. *Harman v. Apfel*, 211 F3d 1172, 1179 (9th Cir), *cert*

*denied*, 531 US 1038 (2000).  When the record is not fully developed or it is not clear from the

record whether the claimant is disabled, remand for additional proceedings is appropriate. *Vazquez v. Astrue*, 572 F3d 586, 597 (9th Cir 2009), citing *Harman*, 211 F3d at 1178-79.

As discussed above, the ALJ failed to provide sufficient rationales to discount the medical opinions of Drs. Barry and Fishman. Tr. 479, 611.  In addition, Dr. Marie, the only treating physician, provided a brief assessment of Langwell's likelihood to maintain employment.  However, it is far from clear what weight should be given to those opinions.

Unlike many cases where the court must determine whether to "credit-as-true" erroneously disregarded medical evidence, Langwell does not contest the ALJ's negative assessment of her credibility, further complicating the analysis of this record.  Thus, while the ALJ's proffered reasons for rejecting evidence were legally deficient, given Langwell's poor credibility, it is not a foregone conclusion that Langwell is disabled on this record, even if the functional limitations set forth by Drs. Barry and Fishman were credited as true.

Furthermore, Dr. Marie only treated Langwell for a few months, and her opinion, which is expressed as brief answers to a questionnaire from Langwell's attorney, does not set out definitive functional limitations. Tr. 1005; *see Orn v. Astrue*, 495 F3d 625, 633 (9th Cir 2007) (the nature and extent of the treating relationship is a factor in considering the weight afforded to treating physicians' opinions); *see also, Bray*, 554 F3d at 1228 (an ALJ need not accept medical opinions that are brief, conclusory, and unsupported by clinical findings) (citation omitted).  In addition, Dr. Marie's opinion is contradicted by the opinions of the state medical examiners who opined that Langwell would be able to maintain full-time work.  Tr. 101-02, 129-30.  As such, the record remains equivocal.  Therefore an ALJ, rather than this court, is the appropriate arbiter to assess what weight to afford the medical opinion of Dr. Marie.  *See Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F3d 595, 601 (9th Cir 1999) ("Where medical reports are inconclusive,

questions of credibility and resolution of conflicts in the testimony are functions solely of the Secretary.") (internal quotation marks and citation omitted).

If the ALJ had properly assessed the opinions of Drs. Barry and Fishman and/or had the opportunity to assess the opinion of Dr. Marie, the outcome of this case may have been different. Since ambiguity remains regarding the extent of Langwell's functional limitations, further proceedings are necessary. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F3d 1090, 1105 (9th Cir 2014) ("Where . . . an ALJ makes a legal error, but the record is uncertain and ambiguous, the proper approach is to remand the case to the agency."). On review, the ALJ should reassess the reports produced by Drs. Barry and Fishman and determine the evidentiary significance of the opinion provided by Dr. Marie.

## RECOMMENDATION

For the foregoing reasons, the Commissioner's decision should be REVERSED and this case should be REMANDED for further proceedings.

## SCHEDULING ORDER

These Findings and Recommendations will be referred to a district judge. Objections, if any, are due Monday, June 22, 2015. If no objections are filed, then the Findings and Recommendations will go under advisement on that date.

If objections are filed, then a response is due within 14 days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendations will go under advisement.

DATED this 4th day of June 2015.

s/ Janice M. Stewart_____
Janice  M. Stewart
United States Magistrate Judge